IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| B.D., | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | No. 5:23-cv-123 (CHW) |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | Social Security Appeal |
| | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

# ORDER

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff B.D.'s application for benefits under Title II and Title XVI of the Social Security Act. The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, and as a result, any appeal from this judgment may be taken directly to the Eleventh Circuit Court of Appeals in the same manner as an appeal from any other judgment of the United States District Court. Plaintiff has not shown that the ALJ failed to comport with the Appeals Council's instructions upon remand, that the ALJ failed to appropriately consider Plaintiff's mental impairments at step three of the sequential evaluation process, or that the Appeals Council improperly disregarded new evidence. Accordingly, it is **ORDERED** that the Commissioner's decision be **AFFIRMED.**

## BACKGROUND

Plaintiff filed an application for disability and disability insurance benefits on May 22, 2018. (R. 378). Plaintiff alleged an onset date of March 23, 2018. *Id.* Plaintiff's application was

denied initially and upon reconsideration. (R. 190-93, 197-202). After a hearing before the Administrative Law Judge ("ALJ"), the ALJ issued a decision finding that Plaintiff was not disabled on October 21, 2021. (R. 56-86, 156-79). The Appeals Council granted Plaintiff's request for a remand on March 18, 2022. (R. 185-89). After a second hearing, the ALJ again found that Plaintiff was not disabled on August 24, 2022. (R. 7-27, 87-125). Plaintiff requested review of this decision, which the Appeals Council denied. (R. 1-6). Plaintiff filed his complaint seeking judicial review of the final decision of the Commissioner on April 7, 2023. (Doc. 1).

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, that decision must be affirmed even if the evidence preponderates against it.

## EVALUATION OF DISABILITY

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## MEDICAL RECORD

Plaintiff presented to Dr. Deepti Bhasin for mental health treatment on May 12, 2015, while he was still employed. (R. 957). Plaintiff complained of anxiety, insomnia, racing thoughts, depression, angry outbursts, and panic attacks. *Id.* Dr. Bhasin noted that Plaintiff was "marginal[ly]" functioning at work and diagnosed Plaintiff with major depressive disorder, bipolar Type I, generalized anxiety disorder, panic disorder, and adult attention deficit disorder. *Id.* Plaintiff was prescribed Brintellix at 5 milligrams once a day and 10 milligrams twice a day, Seroquel at 25 milligrams twice a day, Adderall at 20 milligrams once a day, and Klonopin at 1 milligram twice a day. *Id.* Plaintiff also began therapy with Dr. Bhasin, which continued along with medication through 2016 and 2017. (R. 947, 823-924). Over this period, Plaintiff reported increasing difficulties at work, such as having problems with his attention span, having his responsibilities delegated to other employees by his supervisor, and receiving reprimands. (R. 843, 823, 817). Plaintiff eventually quit his job and stopped taking his medications. (R. 817).

Dr. Maher Abdulla served as Plaintiff's primary care physician. On January 17, 2017, in a visit with Dr. Abdulla, Plaintiff reported taking his mental health medications as prescribed, but he complained that he had decreased pleasure from things he had previously enjoyed doing. (R. 660). Plaintiff was diagnosed with diabetes later that year and was prescribed medication to treat it. (R. 656). On May 8, 2018, Plaintiff reported during a follow-up visit that he had experienced a panic attack and had quit his job. (R. 650). Plaintiff described his symptoms as a rapid heartbeat and chest pain, and he reported that he had experienced these symptoms since he was a teenager. (R. 65).

Plaintiff began treatment at Middle Georgia Counseling and Testing on March 27, 2018, for anxiety, panic attacks, suicidal thoughts, and mood problems. (R. 678). Plaintiff had eleven sessions with Jason Hobbs, a licensed clinical social worker, during his period of treatment in 2018.

Dr. Bhasin filled out a Mental Impairment Questionnaire form on June 19, 2018. (R. 669). In this questionnaire, Dr. Bhasin indicated that Plaintiff's orientation, appearance, and general behavior had been normal during his most recent mental health status examination. *Id.* Plaintiff's affect and mood had been angry, and his thought process and flow of mental activity were marked as normal, with an additional note to specify that Plaintiff ruminates. *Id.* Plaintiff's thought content was negative and delusional, but he had no suicidal or homicidal ideations or psychotic signs or symptoms. (R. 670). Plaintiff's recent and remote memories were normal, but his insight, judgment, and impulse control were all indicated to be abnormal. *Id.* Plaintiff's diagnoses were bipolar disorder and a personality disorder. *Id.* Plaintiff showed a normal ability to understand, remember, and carry out simple instructions. *Id.* Plaintiff was reported to have "a difficult time getting along with people" because of his "anger issues and unreliability." (R. 671). Dr. Bhasin

4

indicated that it was somewhat likely that Plaintiff would decompensate or become unable to function under stress. *Id.* Plaintiff's ability to make simple work-related decisions was gauged as normal, and Plaintiff was considered competent to handle funds. *Id.*

When Plaintiff returned to Dr. Abdulla on August 7, 2018, Dr. Abdulla noted Plaintiff's severe depression and observed that Plaintiff appeared withdrawn. (R. 713). Plaintiff returned again for a follow-up on September 18, 2018, in which Dr. Abdulla noted that Plaintiff continued to complain of severe major depression. (R. 711). Plaintiff was continuing to see Dr. Bhasin but reported that the treatment was not doing much for him. (R. 707).

On January 17, 2019, Dr. Bhasin noted that Plaintiff's wife reported Plaintiff was more withdrawn, despite taking his medication as prescribed. (R. 785). Plaintiff's wife was concerned for her husband's safety because he was not responding to his medication. *Id.* Dr. Bhasin noted that Plaintiff had been decompensating and was "not functioning" at this time. *Id.* On January 25, 2019, Dr. Bhasin terminated Plaintiff's care due to a lack of response to treatment and referred him to the Coliseum Behavioral Health Program. (R. 728).

Plaintiff was admitted to Coliseum Medical Center's inpatient adult psychiatric unit on January 23, 2019, on Dr. Bhasin's referral. (R. 767). Plaintiff was recorded as experiencing depression with suicidal ideation. *Id.* Plaintiff remained in inpatient care until January 27, 2019, when he transitioned to the day-partial program. He continued treatment there with psychiatrist Dr. Dwight Bearden until March 2019. (R. 733-763). Plaintiff was prescribed Cymbalta on February 7, 2019, and his dosage was increased to 30 milligrams on February 28, 2019. (R. 733). On March 21, 2019, Plaintiff was noted as participating appropriately in groups and his mood "brighten[ed], [he felt] more positive, [and] hopeful for the future." *Id.* Plaintiff had no thoughts of suicide. *Id.* A similar report was issued by Dr. Bearden on March 28, 2019. (R. 733).

Plaintiff began treatment at the Georgia Center for Bipolar Disorder with Dr. Ali Ahmadi after Dr. Bhasin terminated Plaintiff's care. (R. 973). Dr. Ahmadi evaluated Plaintiff on May 23, 2019, reporting the symptoms of Plaintiff's depression as loss of energy, difficulty concentrating, fatigue, feelings of worthlessness, feelings of guilt, increased worry, irritability, isolation, trouble sleeping, and suicidal ideations. *Id.* Plaintiff appeared glum, was minimally communicative, had depressed thought content, had a depressed mood, and had a constricted affect. (R. 975). Dr. Ahmadi diagnosed Plaintiff with bipolar disorder, Type I, with severe depressed mood, generalized anxiety disorder, and panic disorder. *Id.* Plaintiff had monthly appointments with Dr. Ahmadi through 2019, 2020, 2021, and 2022, with similar reports regarding the state of his depression. *See* (R. 963, 971, 1025, 1031, 1066).

Plaintiff presented at Mixon Family Cosmetic Dentistry on October 16, 2019, with multiple dental fractures. (R. 1014). Dr. Mixon reported heavy plaque and inflammation that was the result of poor home care of Plaintiff's teeth. *Id.* Plaintiff later required tooth extractions and implants because of his poor dental condition. *Id.*

Dr. Ahmadi completed a Mental Impairment Questionnaire for Plaintiff in January 2020. (R. 978). Dr. Ahmadi listed Plaintiff's diagnoses as bipolar with severe depression and anxiety disorder with panic disorder. *Id.* These diagnoses included symptoms of loss of interest in activities, decreased energy, thoughts of suicide, feelings of worthlessness, generalized persistent anxiety, difficulty thinking and concentrating, and sleep disturbances. (R. 978-79). Dr. Ahmadi indicated that Plaintiff had serious limitations in his ability to remember procedures, carry out simple instructions, maintain regular attendance, sustain an ordinary routine without specialized supervision, work in coordination or proximity to others without distraction, perform at a consistent pace, accept instructions, respond appropriately to criticism from supervisors, cope with

work stress, and respond to changes in work routines or settings. (R. 980). Dr. Ahmadi opined that Plaintiff had marked limitations in his ability to perform daily living activities and in his ability to concentrate, persist, and maintain pace and an extreme limitation in social functioning. (R. 982).

In June 2022, Dr. Ahmadi completed interrogatories from Plaintiff that restated his assessments and opinions from the 2020 Mental Impairment Questionnaire and disagreed with the ALJ's second unfavorable decision against Plaintiff.

## DISABILITY DETERMINATION

Following the five-step evaluation process, the reviewing ALJ made the following findings. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, March 23, 2018. R. 13. At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus; bipolar disorder with depressed mood; generalized anxiety disorder; panic disorder; personality disorder; and a history of attention deficit hyperactivity disorder. (R. 13). At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 14. Before evaluating Plaintiff at step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) with the following additional limitations: he can frequently perform postural movements of climbing ramps or stairs, balancing, stooping, crouching, crawling or kneeling, but he should not climb ladders, ropes or scaffolds or similar hazard exposure; he can perform simple tasks and respond to any amount at any frequency of changes in his simple job routine; and he can have occasional social interactions with co-workers, supervisors, and the public. R. 15. At step four, with the benefit of testimony from a vocational

expert, the ALJ found that Plaintiff could not perform any past relevant work. (R. 25). At step five, after considering Plaintiff's age, education, work experience, and residual functioning capacity, the ALJ found that there were jobs that existed in significant numbers in the national economy which Plaintiff could perform, such as marker, cleaner, laundry room worker, kitchen helper, and warehouse worker. R. 26. Accordingly, the ALJ found that Plaintiff was not disabled. (R. 27).

## ANALYSIS

Plaintiff argues that remand is appropriate because (1) the ALJ failed to follow the Appeal Council's order upon remand, (2) the ALJ did not properly assess Plaintiff's RFC and specifically failed to properly consider Plaintiff's mental impairments, and (3) the ALJ improperly substituted his own opinion for that of a medical professional when he rejected the argument that Plaintiff's mental impairment satisfies the criteria for Social Security Listing 12.04. For the following reasons, each of these arguments is insufficient to warrant remand.

1. *The Commissioner complied with the Appeals Council's order when assessing Plaintiff's RFC*

Plaintiff argues that the ALJ's RFC still conflicts with his finding that Plaintiff has a moderate limitation in concentrating, persisting, and maintaining pace, despite the Appeals Council's remand on that issue. (Doc. 13 at 12). The Appeals Council remanded the case because "in evaluating the claimant's mental impairments in accordance with the special technique set forth in 20 CFR 404.1520a, the hearing decision contains rationale that is inconsistent with the assessed residual functional capacity." (R. 186). Specifically, the ALJ determined that Plaintiff had moderate limitations in understanding, remembering, or applying information; in interacting with others; in concentrating, persisting, or maintaining pace; and in adapting or managing himself.

8

Plaintiff argues that the RFC the ALJ assigned to Plaintiff does not correspond to these limitations for difficulties in concentrating, persisting, or maintaining pace or in adapting or managing himself. *Id.* Plaintiff also argues that the ALJ's findings contradict the medical evidence from Dr. Bhasin and Dr. Ahmadi.

When assessing mental impairments, an ALJ rates a claimant's level of limitation in four broad functional areas identified by the psychiatric review technique ("PRT") prescribed by the standards. (R. 14-15); 20 C.F.R. § 404.1520a(C), (e)(4). PRTs are not assessments related to a claimant's RFC; they are used to rate the severity of mental impairments when assessing steps two and three of the sequential evaluation process. R. 15; 20 C.F.R. §§ 404.1520(a)(4)(ii)-(iii); 404.1520a(d)(1), (d)(2). The ALJ used the PRT rating at steps two and three to determine that while Plaintiff had severe mental impairments, he did not have an impairment or combination of impairments that met or equaled a listed impairment. (R. 14-15). As Plaintiff's impairments did not meet or equal a listed impairment, the ALJ continued to assess Plaintiff's RFC. The "RFC is the measure of an individual's 'maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 96-8p. The ALJ determined that Plaintiff was limited to simple work and could respond to any amount or frequency of change in the context of simple work. (R. 15). The assigned RFC relied upon substantial evidence which supported the ALJ's findings and comports with Eleventh Circuit precedent which holds that simple work is an appropriate RFC finding for a variety of moderate difficulties with concentration, persistence, or pace when the record otherwise supports a claimant's ability to perform unskilled or simple work. *See Mijenes v. Comm'r. of Soc. Sec.*, 687 F. App'x. 842, 846 (11th Cir. 2017); *Duval v. Comm'r. of Soc. Sec.*, 628 F.App'x. 703, 712-13 (11th Cir. 2015).

Plaintiff notes that the record in this case differs from the record in *Mijenes*, where the claimant had only one treating psychiatrist who issued only one opinion, but this difference does not show that the ALJ's findings lacked substantial evidence, as Plaintiff argues. (Doc. 15 at 3 ("The present record starkly contrasts to the *Mijenes* record, and so, we maintain the Commissioner's decision cannot be supported by substantial evidence."))  Although Plaintiff argues that the ALJ's findings were contrary to the medical evidence from Dr. Bhasin and Dr. Ahmadi, the ALJ relied upon evidence from these doctors when making his findings.  The ALJ pointed to Dr. Bhasin's reports of Plaintiff being able to understand, remember, and carry out simple instructions even when he had stopped taking his medications in 2018, and Dr. Ahmadi's assessment that Plaintiff retained logical thinking with appropriate thought content and no signs of attentional difficulties, even though Plaintiff reported significant symptoms related to his mental health conditions during that visit. (R. 17, 669-71, 963-72).  The ALJ also pointed to Plaintiff's daily activities as an indication of his capacity for the assigned RFC.  Plaintiff drove his children to school, managed their extracurricular activities, engaged in online video games with others, shopped, and socialized daily with his family. (R. 17).  Although Plaintiff takes issue with the ALJ's assessment of his daily activities in light of his severe depression, it is proper for the ALJ to consider Plaintiff's daily activities, provided that these activities are only one of several factors that the ALJ relied upon in making his decision. *See Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) (reversing district court's remand where ALJ properly considering claimant's daily activities, symptoms, and medications while concluding that claimant's subjective complaints were inconsistent with his testimony and the medical record).

While Plaintiff correctly notes that conditions like his vary in their presentation of symptoms and that bad days and good days present with significantly different limitations, the

evidence that the ALJ relied upon included reports from periods in which Plaintiff was actively struggling with symptoms of his condition, such as when he was unmedicated or reported significant depression, irritability, and difficulty sleeping and concentrating. (R. 669-71, 963-72). This is not a finding that "verges on blatant mischaracterization" of Plaintiff's condition because of its reliance on Plaintiff's good days and ignorance to Plaintiff's bad days, as Plaintiff suggests through citations to *Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094, 1106 (2021). Although Plaintiff may have preferred that the ALJ cite to or give more weight to additional evidence regarding the severity of Plaintiff's mental health concerns, there is no requirement that the ALJ must cite to each piece of evidence when making his decision, and the Court may not reweigh the evidence considered by the ALJ to match the Plaintiff's preferences. *See Dyer,* 395 F.3d at 1211; *Mitchell v. Comm'r. Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner."). Plaintiff points to other assessments from Plaintiff's doctors and evidence in the record to support his argument for remand but fails to show that the evidence that the ALJ used to support his findings lacked substance. Under the standards, this is insufficient, as the claimant "must do more than point to evidence in the record that supports [his] positions; [h]e must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r. of Soc. Sec.*, 706 F.App'x. 595, 604 (11th Cir. 2017). "Even if the evidence preponderates against the Commissioner's findings, the court must affirm if the decision reached is supported by substantial evidence." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).

Plaintiff's case was remanded with direction to resolve an inconsistency between Plaintiff's RFC and the ALJ's finding of moderate limitations in concentration, persistence, and pace and the ability to adapt. The ALJ appropriately accounted for this inconsistency. The ALJ explained

Plaintiff's RFC in light of his limitations, while relying upon substantial evidence by finding that Plaintiff could perform simple work and appropriately handle changes within the context of simple work. Accordingly, Plaintiff has not shown a basis for remand, as the ALJ appropriately considered Plaintiff's limitations when issuing the RFC and in the earlier steps of his analysis involving PRTs.

2. *The ALJ properly considered Listing 12.04, and his decision is supported by substantial evidence*

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's mental impairments at step three by finding that none of Plaintiff's impairments or combination of impairments met or medically equaled the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, because the ALJ dismissed a statement from Dr. Ahmadi which opined that Plaintiff's depression satisfied the criteria for Listing 12.04. (Doc. 13 at 17). The ALJ dismissed Dr. Ahmadi's opinion on the basis that it was inconsistent with the record, especially Plaintiff's daily activities. (R. 23). In assessing the criteria for Listing 12.04, the ALJ found that Plaintiff did not show a "marked" or "extreme" limitation in any of the areas of mental functioning set out in Part B. The ALJ found that Plaintiff had a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing himself. (R. 14). The statement from Dr. Ahmadi, which is dated July 13, 2022, and was submitted "to be used in [Plaintiff's] clam for disability benefits," states Dr. Ahmadi's opinion that Plaintiff "satisfies the criteria in 'B' because he has marked limitations in both 'interacting with others' and 'concentrating, persisting, or maintaining pace.'" (R. 1073-75). In support of this opinion, Dr. Ahmadi cites to a Mental Impairment Questionnaire executed on January 16, 2020. (R. 978-983).

Plaintiff contends that the ALJ erred in disagreeing with Dr. Ahmadi's opinion and improperly substituted his medical judgment for that of an examining psychiatrist when evaluating Plaintiff's depression. (Doc. 13 at 17).

The opinion stated in Dr. Ahmadi's statement was not a medical judgment, however, but an opinion about the application of Listing 12.04. Ultimately, the ALJ is required to exercise his judgment when assessing a claimant's RFC. *See Moore v. Soc. Sec. Admin., Comm'r.*, 649 Fed. App'x. 941, 945 (11th Cir. 2016) ("[Claimant] argues that the [ALJ] 'substituted [his] opinion for' that provided by [the doctor], but the task of determining a claimant's residual functioning capacity and ability to work rests with the [ALJ], not a doctor.") (citing 20 C.F.R. § 404.1546(c)). The determination of whether an impairment meets or equals a Social Security Listing is an issue reserved to the Commissioner. 20 C.F.R. § 404.1520b(c)(3)(iv). The statement made by Dr. Ahmadi directly addressed whether Plaintiff's condition met the requirements for Listing 12.04, and therefore, was not a medical opinion but rather a statement on an issue reserved for the Commissioner. 20 C.F.R. § 404.1520b(c)(3). ALJs are instructed by the standards not to provide analysis of evidence that addresses issues reserved for the Commissioner, as it is "inherently neither valuable nor persuasive to the issue" of a claimant's potential disability, and again, is not medical evidence. *Id.*, (c)(3). The ALJ assessed the Questionnaire submitted by Dr. Ahmadi at some length, but he found that the opinion was no consistent with the rest of the record, including Plaintiff's daily activities as reported by himself and his wife. (R. 21). Other courts have found such an assessment to be either appropriate or harmless error. *See Vachon v. Comm'r of Soc. Sec.*, No. 6:20-cv-1521-MRM, 2022 WL 458604 at *10 (M.D. Fla. Feb. 12, 2022) (citing *Sanchez v. Comm'r of Soc. Sec.*, 507 F.App'x. 855, 856 (11th Cir. 2013)).

Accordingly, Plaintiff has not shown cause for remand on this basis.

3. *The Appeals Council properly considered new evidence*

Plaintiff argues that the Appeals Council erroneously concluded that a second statement of Dr. Ahmadi was not material evidence that provides a reasonable probability of changing the outcome of the decision in this case. (Doc. 13 at 18). This second statement is not dated, but was submitted by Plaintiff's counsel on January 17, 2023. (R. 47-50). Plaintiff argues that Dr. Ahmadi's statement is material, as it contradicts the ALJ's findings and conclusions while restating Dr. Ahmadi's assessment of Plaintiff and providing background information and additional explanation of this assessment. (*Id.* at 19). In the new evidence, Dr. Ahmadi also disagrees with the ALJ's second decision by opining that Plaintiff could not respond to any amount and any frequency of change in a simple job routine and that Plaintiff is incapable of even occasional interactions with co-workers, supervisors, and the public. (R. 49). Plaintiff contends that the Appeals Council perfunctorily adhered to the ALJ's decision and, in doing so, committed error. (*Id.*)

"With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including before the Appeals Council. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council "must consider new, material, and chronologically relevant evidence" presented by the claimant. *Id.* Evidence is new when "it was not previously before the ALJ," evidence is material when "there is a reasonable possibility that the new evidence would change the administrative outcome" of the case, and evidence is chronologically relevant if it relates to the time of or before the date of the ALJ's decision. *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987); *Hargress v. Comm'r. of Soc. Sec.*, 883 F.3d 1302, 1309 (11th Cir. 2018). "When a claimant properly presents new evidence, and the Appeals Council denies review, the Appeals Council must show in its written denial that it has

adequately evaluated the new evidence." *Flowers v. Comm'r of Soc. Sec.*, 441 F.App'x. 735, 745 (11th Cir. 2011) (citing *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980)[1]).  However, the Appeals Council is not required to make specific findings of fact or provide a detailed explanation of the evidence in question when denying requests for review.  *See Parks ex rel. D.P. v. Comm'r. of Soc. Sec.*, 783 F.3d. 847, 852-53 (11th Cir. 2015); *Mitchell*, 771 F.3d at 782-85.  The Appeals Council's denial of review of new evidence is a decision that is subject to judicial review.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The Appeals Council properly denied Plaintiff's request for review.  Plaintiff has not shown that the evidence submitted for the first time to the Appeals Council rendered the ALJ's decision erroneous when considered against the record as a whole.  It does not seem that Plaintiff could make such a showing, as the new evidence was primarily a restatement of Dr. Ahmadi's previous statements, which were considered by the ALJ.  Further, Plaintiff has not shown that this evidence undermines the substantial evidence supporting the ALJ's findings.

The evidence in question restates the opinions of Dr. Ahmadi that were expressed in multiple opinions before the ALJ.  Dr. Ahmadi stated as much in the new evidence, in which he expresses his agreement with his previous statements and expresses his disagreement with the ALJ's findings.  (R. 48-50).  The additional background information and explanations do not change the fact that Dr. Ahmadi's position in the new evidence is consistent with his previous positions, which the ALJ considered.  Such reiterations do not show a reasonable probability of a different outcome of the case, simply because a doctor explicitly disagrees with the ALJ's findings

---

[1] Decisions of the former Fifth Circuit issued on or before September 30, 1981, are binding precedent in the Eleventh Circuit.  *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

and explains why. Dr. Ahmadi disagreed with the ALJ's findings for the same reasons he expressed in previous statements before the ALJ.

Plaintiff does not point to any specific information in the new evidence that undermines the substantial evidence supporting the ALJ's original decision, but rather asserts that the statement is material because it contradicts the ALJ's conclusions and findings. Plaintiff notes that "Dr. Ahmadi reported that he disagreed with the ALJ's finding that the Plaintiff can 'respond to any amount at any frequency of changes in his simple job routine' because Plaintiff's profound depression decreases his ability to concentrate and remember and 'causes excessive worrying.'" (Doc. 13, p. 19, citing R. 49). Plaintiff argues that this opinion presents "new specific findings and comments regarding the ALJ's second decision." But the ALJ had already considered multiple opinions from Dr. Ahmadi that held that Plaintiff was explicitly unable to work, which the ALJ disregarded because he found such opinions to be inconsistent with the record. *See* R. 22-23. Dr. Ahmadi had previously opined that Plaintiff's symptoms "affect[ed] his cognitive capacity and ability to engage in any competitive work activity," that Plaintiff was "unable to do any tasks at any workplace," and that Plaintiff was "unable to keep a job" because of his symptoms. (R. 23). Dr. Ahmadi states in the new evidence that he "agreed to make this statement in response to the ALJ's second unfavorable decision to be used in support of [Plaintiff's request for review] because it is still [his] professional opinion that [Plaintiff] suffers from profound depression rendering him marginally functional." (R. 48). Dr. Ahmadi contended that the "mental impairment questionnaire that [he] completed remains an accurate depiction of the severity of [Plaintiff's] mental impairments and resulting limitations," that Plaintiff's "difficulty concentrating, difficulty remembering, and [excessive worrying]" was "notated throughout his treatment notes," and that it was "still [Dr. Ahmadi's] professional opinion that [Plaintiff was] unable to maintain concentration

16

for two-hour segments, would need to be redirected for tasks, is unable to function appropriately to coworkers, supervisors, and the general public, and unable to deal with even low stress work environment[s]." (R. 48-50). These assessments do not include new medical information or opinions; they specifically reiterate evidence already before the ALJ as the basis of disagreement with the ALJ's findings. Such disagreement is not material new evidence that points to a different outcome in this case, but rather a statement of disagreement from a medical professional who stands by his records and opinions that were properly considered and disregarded by the ALJ. Accordingly, Plaintiff has not shown that remand is appropriate on this basis.

## CONCLUSION

Plaintiff has not shown that the Administrative Law Judge ("ALJ")'s findings lacked substantial evidence or otherwise warranted remand. Accordingly, it is **ORDERED** that the Commissioner's decision be **AFFIRMED.**

**SO ORDERED**, this 30th day of August, 2024.

                                               s/ Charles H. Weigle_____
                                               Charles H. Weigle
                                               United States Magistrate Judge